# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MICHAEL ANTONELLI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 02 C 8714 |
| ) | |
| TINA SHERROW, et al. ) | HON. JOHN A. NORDBERG |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, a federal prisoner, has brought this *pro se* civil action pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* and *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). The plaintiff claims that the defendants, the United States Government, two federal agents, and an Assistant U.S. Attorney for the Northern District of Illinois, wrongfully seized a computer belonging to the plaintiff from his ex-wife's home and attempted to perpetrate a fraud on the court in the ensuing civil proceedings. This matter is before the court for consideration of the defendants' combined motions to dismiss and for summary judgment, as well as the plaintiff's cross-motion for summary judgment. For the reasons stated in this order, the defendants' motions are granted and the plaintiff's motion is denied.

The two Special Agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives have moved for summary judgment. Summary judgment "shall be rendered

forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Prime Northgate Plaza Ltd. Partnership v. Lifecare Acquisitions Corp.*, 985 F. Supp. 815, 817 (N.D. Ill. 1997). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 393 (7th Cir. 1997), *cert. denied*, 523 U.S. 1118 (1998). The court may grant summary judgment if facts are in dispute, so long as those facts are not outcome determinative. *Matter of Wildman*, 859 F.2d 553, 556 (7th Cir. 1988); *Nash v. DeTella*, No. 00 C 2784, 2001 WL 1160840, *2 n. 5 (N.D. Ill. Oct. 2, 2001) (Zagel, J.)

While Fed. R. Civ. P. 56 governs the parties' summary judgment obligations, Local Rule 56.1 (N.D. Ill.) reflects "an attempt to make the parties' respective summary judgment

obligations explicit." *See Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994). Local Rule 56.1(b) requires a party opposing a summary judgment motion to file a memorandum of law, any materials or affidavits referred to in Fed. R. Civ. P. 56(e), and a response to the movant's statement of facts. Local Rule 56.1(b)(1)-(3). This response

> shall contain . . . a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon and a statement consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

Local Rule 56.1(b)(3)(A)-(B). Failure to properly controvert a moving party's statement of facts results in the moving party's version of the facts being deemed admitted. Local Rule 56.1(b)(3)(B). Strict enforcement of Local Rule 56.1's requirements has been consistently upheld by the Seventh Circuit, as the court is not required to "scour the record in search of evidence to defeat a motion for summary judgment." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002) (internal quotations omitted).

The plaintiff should be well versed in summary judgment motions; the U.S. Party/Case Index reflects some 144 cases in which he has been a party. Nevertheless, the plaintiff has failed to comply with the requirements of Local Rule 56.1(b). His response to the defendants' motion does not include a specific statement of facts with citations to the record; instead, he has provided a largely argumentative, narrative response. The plaintiff's failure to comply with the Local Rules is not excused by his *pro se* status. *See Stevens v. Navistar Int'l Transp. Corp.*, 244 F. Supp. 2d 906, 910 (N.D. Ill. 2002) (holding that even

3

though the court reads a *pro se* plaintiffs pleadings liberally, *pro se* status does not excuse a failure to comply with Local Rule 56.1). In any event, the basic, material facts regarding the seizure of the plaintiff's computer are not in dispute; the purpose of the federal agents' visit to Ms. Antonelli is irrelevant to the question of whether they properly took possession of the computer.

Nevertheless, because the plaintiff is proceeding *pro se*, the court has considered the factual assertions he makes in his opposing brief, as well as in his belatedly filed cross-motion for summary judgment, but only to the extent that the plaintiff could properly testify about the matters asserted. A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 602.

## FACTS

The plaintiff, Michael Antonelli, is a resident of Illinois, but has been incarcerated in federal prison since 2001. (Amended Complaint, ¶¶ 3, 14.) The defendants Tina Sherrow and Jeanne Sobol were employed as Special Agents with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives [hereinafter, "BATF"] at the time of the events giving rise to this action. (*Id.*, p. 2, ¶ B.) The defendant Patrick Johnson is an assistant U.S. Attorney for the Northern District of Illinois. (Defendants' Answer, p. 7.)

The following facts are uncontested for purposes of this motion (or there is no genuine dispute requiring a trial): In or about September 2001, prior to surrendering to authorities,

the plaintiff delivered a computer he owned to his ex-wife, Nancy Antonelli, for use by Ms. Antonelli and her family while the plaintiff was incarcerated. (Amended Complaint, p. 3, ¶¶ 14-15.) Ms. Antonelli, her son, and her son's friend used the computer occasionally but eventually stopped using it and placed it in the attic of their home. (Defendants' Exhibit B, Deposition of Nancy Antonelli, at pp. 34-38.)[1]

In 2002, the defendants Sobol and Sherrow were investigating a bombing in the Chicago area. (Amended Complaint, p. 6, ¶ 48.) On or about May 1, 2002, Sobol and Sherrow visited Ms. Antonelli at her home and asked if they could interview her about the plaintiff's possible involvement in the bombing.[2] (Defendants' Exhibit C, Affidavit of Nancy Antonelli, ¶ 3.) Ms. Antonelli agreed to answer questions and was interviewed for approximately an hour. (N. Antonelli Deposition, p. 43). The interview took place at a picnic table outside, on her patio. (*Id.*, p. 44.) Ms. Antonelli has obtained a G.E.D. and has taken about ten college courses. (*Id.*, pp. 16-17.) Ms. Antonelli currently works as a technical assistant at Federal Signal Corporation. (*Id.*, p. 18.) Her job duties include acting

---

[1]
Neither party has submitted the cited pages 34-38 of the deposition; however, the court will accept this statement as true since the matter is uncontested.

[2]
The plaintiff's subjective believe that the defendants were trying "to pin . . . some sort of bombing on him (any kind)" does not create a genuine issue of fact. Even ignoring the fact that there is no evidence whatsoever in the record to support that assertion, the plaintiff's characterization of the nature of the interview is irrelevant for purposes of determining the propriety of the seizure of his computer.

as a liaison between engineers designing products and the manufacturing personnel. (*Id.*, p. 23.)

During the interview, Ms. Antonelli informed the agents that the plaintiff had given her a computer for the family's use while he was incarcerated. (*Id.*, p 88; Defendants' Exhibit C, Affidavit of Nancy Antonelli, ¶ 4.) Ms. Antonelli additionally stated that the computer was in her attic because she no longer used it. (N. Antonelli Deposition, pp. 50, 88; N. Antonelli Affidavit, ¶ 5.)

The agents asked Ms. Antonelli for permission to take the computer and search it. (Antonelli Affidavit, ¶ 5.) Ms. Antonelli responded that she did not want to bother to retrieve the computer from the attic; that it was not hers to give; that she did not feel "it was right" to turn it over to the officers; and that, besides, she had previously searched the computer and found nothing on it. (N. Antonelli Deposition, pp. 52-53, 91; N. Antonelli Affidavit, ¶ 5.)

The agents indicated that they would try to get a search warrant for the computer. (N. Antonelli Deposition, p. 54; N. Antonelli Affidavit, ¶ 6; Plaintiff's Exhibit K, #3.) Ms. Antonelli then threw up her hands in frustration, saying, "Nobody is coming in my house. I haven't done a thing. I'm not involved with him." (N. Antonelli Deposition, p. 55.) She added that she was "not going to allow people in to tear [up her] house," which she rents, and that she had been through embarrassment enough. (*Id.*, p. 56.) She then agreed to give the computer to the agents, telling them that she did not want it back. (*Id.*, pp. 54-55.)

Ms. Antonelli maintains that she would not have consented to the search of the computer if the agents had not mentioned the possibility of a search warrant. (N. Antonelli Affidavit, ¶ 8.) Based on what she had seen on television and a previous search by local police officers, Ms. Antonelli feared that if the agents obtained a search warrant, they would kick in her door and ransack her home. (N. Antonelli Deposition, pp. 70-75.) However, Ms. Antonelli admits that the defendants said nothing during the interview to suggest that they would kick in her door, search the home, or take anything other than the computer. (*Id.*)

Ms. Antonelli asked the agents to come back in a day or two to pick up the computer, saying that it would take her a while to retrieve it from the attic. (N. Antonelli Deposition, pp. 55-57; N. Antonelli Affidavit, ¶ 7.) The agents agreed, ended the interview, and left. (N. Antonelli Deposition, p. 57.)

On May 2, 2002, Sherrow returned to Ms. Antonelli's home to pick up the computer. (N. Antonelli Deposition, p. 59-60). Sherrow gave Ms. Antonelli a receipt for the property. (*Id.; see also* Defendants' Exhibit D, "Receipt for Property and Other Items.")

At neither of these two encounters did either Sobol or Sherrow raise their voices, threaten Ms. Antonelli, or attempt to physically or verbally intimidate her. (N. Antonelli Deposition, pp. 67, 75).[3] They spoke in "conversational tones." (*Id.*) The agents did not

---

[3]

The plaintiff states, without any citation to evidence in the record, that Sherrow and Sobol did, in fact, intimidate Ms. Antonelli. However, unsupported statements in a brief are not evidence and cannot be given any weight. *See, e.g., In the Matter of Morris Paint and Varnish Co.*, 773 F.2d 130, 134 (7th Cir. 1985); *Buck v. Lake County Sheriff*, No. 03 C 1740, 2004 WL 2983966, *1 n.1 (N.D. Ill. Dec. 23, 2004) (Gottschall, J.). The plaintiff, who was not present during the agents' interview

threaten Ms. Antonelli's children. (*Id.*, p. 69.) Ms. Antonelli cannot say that she felt coerced into relinquishing the computer. (*Id.*, p. 113.)

In a certified letter dated July 5, 2002, several months after the agents took the computer, the plaintiff sent Sherrow a letter demanding the computer's return to Ms. Antonelli. (Amended Complaint, ¶ 28.) The plaintiff also sent letters to the Director of the BATF and the Inspector General of the Department of the Treasury demanding the computer's return. (Plaintiff's Exhibits M and N.) However, Ms. Antonelli herself never requested its return. (N. Antonelli Deposition, p. 99.)

The plaintiff initiated this action in December 2002, naming only Agent Sherrow and the United States as defendants in the original complaint.

On April 18, 2003, after the BATF had completed its search of the computer, Sherrow returned the computer to Ms. Antonelli. (Plaintiff's Exhibit K, ¶ 6.) The computer was returned in the same condition it had been in when it was taken eleven months earlier. (N. Antonelli Deposition, pp. 78, 82.)[4]

On or about April 24, 2003, the plaintiff filed an administrative claim regarding the search and seizure of his computer. (Defendants' Exhibit F, ¶ 5.) The plaintiff has

---

with Ms. Antonelli, is in no position to contradict his ex-wife's sworn deposition testimony.

[4] Again, the court cannot find either pages 78 or 82 of the deposition transcript among either party's exhibits. But again, the plaintiff does not dispute that the computer was returned undamaged. He claims only depreciation in resale value.

The plaintiff also demands additional discovery to ascertain what information was gleaned from the government's search of the computer. That question, however, is wholly irrelevant to the issues at hand–that is, whether the agents improperly seized and searched the computer.

admittedly never filed an administrative claim regarding the defendant Johnson's conduct. (Plaintiff's Response to Defendants' Combined Motions, final paragraph of p. 3.)

On July 14, 2004, the plaintiff filed an amended complaint, adding Special Agent Sherrow and AUSA Johnson as defendants.

## DISCUSSION

No material facts are in dispute, and the defendants Sherrow and Sobol have shown that they are entitled to judgment as a matter of law on the plaintiff's claims against them. Furthermore, even accepting the factual allegations in the first amended complaint as true, the court finds that the plaintiff has failed to state either an actionable *Bivens* claim against the defendant Johnson or a cognizable Federal Tort Claim against the United States. Accordingly, the defendants' combined motions to dismiss and for summary judgment are granted and the plaintiff's cross-motion for partial summary judgment is denied.

## I. Plaintiff's *Bivens* Claims Against Special Agents Sherrow and Sobol (Counts I-IV)

The motion for summary judgment filed by the defendants Sherrow and Sobol is granted. No material facts are in dispute and the defendants have established that they are entitled to judgment as a matter of law. Even viewing the record in the light most favorable to the plaintiff, no reasonable person could find that the defendants committed any constitutional violation or state tort when they took possession of the plaintiff's computer.

First, the plaintiff's claims against Agent Sobol are untimely. The statute of limitations for Section 1983 actions filed in Illinois is two years. *See* 735 ILCS § 5/13-202;

*Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001), *citing Ashafa v. City of Chicago*, 146 F.3d 459, 462 (7th Cir. 1998). The plaintiff's claims against Sobol are based upon the seizure of his computer in May 2002; however, he did not add her as a defendant until he filed an amended complaint on July 8, 2004.[5] Because the plaintiff waited more than two years to file suit against Sobol, his claims against her are time-barred.

The plaintiff asserts that he "unequivocally did not know the name of Agent Sobol" until after he conducted discovery. However, in the absence of efforts on the part of the defendants to conceal their identity from the plaintiff, he cannot avail himself of Rule 15(c)'s provisions allowing for "relation back" to the original complaint. In this circuit, a plaintiff cannot invoke the relation back principles of Rule 15(c) to name new defendants after the statute of limitations has expired. *See King v. One Unknown Federal Correctional Officer*, 201 F.3d 910, 914-16 (7th Cir. 2000) (plaintiff's belated identification of proper defendant in a *Bivens* action would not relate back to timely-filed complaint). "It is equally well established that Rule 15(c)(3) does not permit relation back where . . . there is a lack of knowledge of the proper party." *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998) (internal citations omitted).

---

[5] The court is treating the complaint as "filed" on the day it was dated and signed rather than the day it was actually received by the Clerk. Under the "mailbox rule," prisoner pleadings are considered filed when given to the proper prison authorities for mailing, and not when received by the district court clerk. *See, e.g., Jones v. Bertrand*, 171 F.3d 499, 501 (7th Cir. 1999), *relying on Houston v. Lack*, 487 U.S. 266 (1988).

Regardless, irrespective of concerns of timeliness, the plaintiff has no viable cause of action against the defendants Sobol and Sherrow because the agents obtained valid, third-party consent from Ms. Antonelli to take the computer.

While a warrantless search ordinarily violates the Fourth Amendment, *see Payton v. New York*, 445 U.S. 573, 586 (1980), a well settled exception to this general rule permits authorities to conduct a search without a warrant if they obtain voluntary consent from: (a) the individual whose property is to be searched, *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); (b) a third party possessing common authority or joint control over the premises, *Florida v. Jimeno*, 500 U.S. 248, 249-50 (1991); or (c) an individual with the apparent authority to consent to the search. *Illinois v. Rodriguez*, 497 U.S. 177, 187 (1990); *see also United States v. Saadeh,* 61 F.3d 510, 517 (7th Cir. 1995).

As noted above, voluntary consent may be given by a third party who possesses common authority over the property. *United States v. Matlock*, 415 U.S. 164, 169-71 (1974); *United States v. Aghedo*, 159 F3d. 308, 310-11 (7th Cir. 1998). "The consent of one who possesses common authority over the premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *Matlock*, 415 U.S. at 170. Similarly, where a party authorizes the joint use of property, the joint user has the authority to consent to the search of the entire property. *United States v. Strache*, 202 F.3d 980, 985 (7th Cir. 2000); *Frazier v. Cupp*, 394 U.S. 731, 739 (1969). It does not matter if the person who gives consent does not own the item in question; the issue is whether the consenting

individual had common authority over the item. *United States v. Brown*, 328 F.3d 352, 356, n.1 (7th Cir. 2003), *cert. denied*, 540 U.S. 1113 (2004) ("[u]se of and access to the property are the touchstones of authority") (citations omitted).

In this case, it is undisputed that the plaintiff left his computer with his ex-wife for her and her family to use while he was incarcerated. Under these circumstances, Ms. Antonelli had actual authority to consent to the search and seizure of the computer. *Compare United States v. Smith*, 27 F. Supp. 2d 1111, 1115 (C.D. Ill. 1998) (consent search upheld where housemate allowed police to search computer in bedroom which housemate occasionally used in owner's absence); *United States v. Robinson*, 479 F.2d 300, 302 (7th Cir. 1973) (girlfriend could allow police to search defendant's property left in girlfriend's house).

Furthermore, even assuming *arguendo* that Ms. Antonelli lacked **actual** authority, she had **apparent** authority to consent to the seizure of the computer. In determining whether an individual has apparent authority, the issue is whether the individual who allows the search projects "an aura of authority," and whether it was reasonable for the police to believe the individual had the authority to consent. *United States v. Saadeh*, 61 F.3d 510, 517 (7th Cir. 1995). Although the plaintiff argues that he had not given Ms. Antonelli permission to use the hard drive and that he demanded the computer's return after discovering that it had been seized, those details do not vitiate Ms. Antonelli's actual or apparent authority to consent to the search of the entire computer, including the hard drive she was allegedly not supposed to use. *See Frazier*, 394 U.S. at 739 (by allowing a third party to use one

12

compartment of duffel bag, the owner assumed the risk that the third party would let others search the entire bag).

There is no triable issue as to whether Ms. Antonelli's consent was voluntary. In assessing whether a consent to search was voluntary, the court examines several factors, including: (1) the consenting individual's age, intelligence, and education; (2) whether the person was advised of his or her constitutional rights; (3) how long the person was detained before giving consent; (4) whether the consent was immediate or was prompted by authorities' repeated requests; (5) whether any physical coercion was used to gain consent; and (6) whether the person was in police custody when she gave her consent. *United States v. Raibley*, 243 F.3d 1069, 1075-76 (7th Cir.), *cert. denied*, 534 U.S. 876 (2001). It is true, as the plaintiff points out, that in the context of a criminal case, the government bears the burden of proving by a preponderance of the evidence that consent was freely and voluntarily given. *United States v. Grap*, 403 F.3d 439, 443 (7th Cir. 2005). However, in a civil rights action, the plaintiff carries the ultimate burden of proof that a consent to search was involuntary. *Valance v. Wisel*, 110 F.3d 1269, 1278-79 (7th Cir. 1997).

Here, the plaintiff has failed to make a triable showing that Ms. Antonelli consented under duress to the taking of the computer. Ms. Antonelli is an adult with a college education and a professional job; her deposition suggests an above average intelligence. Ms. Antonelli was not herself under investigation. She was not detained in any way. She had freely agreed to speak to the federal agents in a conversation that took place on her patio and

that lasted approximately forty-five minutes. At no time did the defendants raise their voices or threaten Ms. Antonelli in any way; at most, they told her that they would seek a search warrant if she refused consent. In addition, after consenting to the search and seizure, Ms. Antonelli did not turn the computer over until the next day; thus, she had ample time to reconsider her consent or to consult an attorney. Indeed, only the plaintiff–and not Ms. Antonelli–claims that the consent was involuntary.

Baseless threats to obtain a search warrant may render consent involuntary. *United States v. White*, 979 F.2d 539, 542 (7th Cir. 1992), *citing United States v. Talkington*, 843 F.2d 1041, 1049 (7th Cir. 1988). When the expressed intention to obtain a warrant is genuine, however, and not merely a pretext to induce submission, it does not invalidate consent. *White*, 979 F.2d at 539, *citing United States v. Duran*, 957 F.2d 499, 502 (7th Cir. 1992), *inter alia*. In this case, the totality of the circumstances show that Ms. Antonelli's consent was voluntary, albeit grudging.

There is no evidence that the defendants intended to coerce Ms. Antonelli through empty threats. Ms. Antonelli stated in her deposition that there was some type of exchange between the agents where one asked the other, "Can we get a search warrant?" and the second agent responded, "Yes." (N. Antonelli Deposition, p. 54.) Under the circumstances of this case, that parley did not approach the level of a threat. The defendants' mere allusion to the possibility of a search warrant did not rise to the level of coercion, notwithstanding Ms. Antonelli's subjective fears about the potentially intrusive nature of such a search.

Ms. Antonelli undoubtedly experienced the vague fear and discomfort that many individuals would feel speaking with law enforcement officers; it is also understandable that she resented being dragged into a criminal investigation concerning her ex-husband. *See* N. Antonelli Deposition at p. 105: When the AUSA deposing Ms. Antonelli asked, "Are you saying I'm intimidating you?" she responded, "I'm sick of the whole situation. . . . Doesn't involve me." "Just the fact that they [agents] were there" at her home and asking questions about a man she "didn't have anything to do with" made her feel harassed and indignant. (*Id.*, pp. 68, 77.) However, the record does not support an inference that her will was overborne by the agents. *Compare United States v. White*, 979 F.2d 539, 542 (7th Cir. 1992) (fact that suspect was in her own living room rather than in custody was evidence that there was no undue coercion; furthermore, an expressed intention to obtain a search warrant if refused consent does not necessarily negate consent); *see also United States v. Evans*, 27 F.3d 1219, 1231 (7th Cir. 1994). The plaintiff's assertion that the defendants resorted to the threat of a search warrant as pretext is entirely speculative, as the record does not reflect what evidence the agents may have gathered linking him to the bombing.

The plaintiff's conspiracy claim against Special Agents Sherrow and Sobol likewise fails. There can be no cause of action for conspiracy if there is no underlying constitutional violation. *Thurman v. Homewood Police Officers*, No. 03 C 8950, 2005 WL 1564975, at *4 (N.D. Ill. Jun. 02, 2005) (Moran, J.), *citing Lesser v. Braniff Airways, Inc.*, 518 F.2d 538, 540 (7th Cir. 1975). For the reasons discussed in preceding paragraphs, no jury could conclude

based on the evidence that the defendants infringed on the plaintiff's constitutional rights in searching and seizing his computer. Consequently, there can be no actionable claim for conspiracy.

In sum, no reasonable finder of fact could find that Ms. Antonelli's consent to the search of the computer was involuntary. Nor could a reasonable person conclude that Ms. Antonelli lacked actual or apparent authority to consent to the taking. Accordingly, summary judgment is granted in favor of the defendants Sobol and Sherrow.

## II. Plaintiff's Claims Against Assistant U.S. Attorney Patrick Johnson (Count V)

In Count V, the plaintiff charges that AUSA Patrick Johnson violated the plaintiff's right to due process by attempting to induce Nancy Antonelli to perjure herself in this case. The defendant has moved to dismiss that count for failure to state a claim.

It is well established that *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972), *reh'g denied*, 405 U.S. 948 (1972); *see also McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). They can be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 521; *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). Fact pleading is not necessary to state a claim for relief. *Thompson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). To satisfy the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), the plaintiff need only state his legal claim and provide "some indication . . . of time and place." *Id.* at 971.

When considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court takes the allegations in the complaint as true, viewing all facts--as well as any inferences reasonably drawn therefrom--in the light most favorable to the plaintiff. *Autry v. Northwest Premium Services, Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). Dismissal should be denied whenever it appears that a basis for federal jurisdiction in fact exists or may exist and can be stated by the plaintiff. *Jones v. Edgar*, 3 F. Supp. 2d 979, 980 (C.D. Ill. 1998).

Here, even accepting the plaintiff's factual allegations as true, the court finds as a matter of law that the plaintiff has no viable claim against the defendant Johnson. An attempt to violate constitutional rights is not actionable; there must be an actual violation of the right. *Andree v. Ashland County*, 818 F.2d 1306, 1311 (7th Cir. 1987). "[T]he mere attempt to deprive a person of his [constitutional] rights is not, under usual circumstances, actionable under section 1983." *Holt Cargo Systems, Inc. v. Delaware River Port Authority*, 20 F. Supp. 2d 803, 834 (E.D. Pa. 1998), *quoting Andree*. The plaintiff cannot recover damages against Johnson for attempting to persuade Ms. Antonelli to lie.

Furthermore, a claim based on perjured testimony is barred by absolute immunity. *Briscoe v. Lahue*, 460 U.S. 325 (1983); *House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992). "Even a prosecutor's knowing use of perjured testimony at trial, while it may require reversal of the conviction . . . nevertheless falls within the scope of absolute immunity." *Rankins v. Winzeler*, No. 02 C 50507, 2003 WL 21058536, *4 (N.D. Ill. May 9, 2003) (Reinhard, J.).

Consequently, the plaintiff's claim that the defendant Johnson attempted to induce the plaintiff's ex-wife to commit perjury is dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.[6]

### III. The Plaintiff's Claims Under the Federal Tort Claims Act (Counts VII-X)

The record does not make clear whether the plaintiff completely exhausted administrative remedies regarding the seizure of his computer prior to filing his first amended complaint. The Federal Tort Claims Act [hereinafter, "FTCA"] mandates that "[a]n action shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing. . . ." 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 107 (1993); *Carter v. Social Sec. Field Office*, No. 02 C 5526, 2004 WL 609316, at *4 (N.D. Ill. Mar. 22, 2004) (Guzmán, J.).

In the case at bar, the plaintiff filed an administrative claim regarding the seizure of his computer about five months after he initiated this action. Neither party has conclusively established whether the plaintiff completed the appeal process after filing a claim with the BATF. The court will assume for purposes of this motion that the plaintiff did exhaust the administrative process prior to filing his amended complaint and that his claim is therefore reviewable in federal court. *See Barnes v. Briley*, — F.3d. —, 2005 WL 2008226, at *4 (7th

---

[6]

The plaintiff seeks the opportunity to put his wife on the stand at trial. However, aside from the fact that the plaintiff already had occasion to cross-examine his wife during her deposition, no amount of testimony could nullify the defendant Johnson's entitlement to absolute immunity.

Cir. slip op. Aug. 23, 2005) (prisoner plaintiff satisfied the PLRA exhaustion requirement and thus was able to raise new, properly exhausted claims in his amended complaint). Nevertheless, the court finds the plaintiff's FTCA claims to be without arguable merit.

## A. Abuse of Process

Under Illinois law, the tort of abuse of process requires proof of two elements: (1) the existence of an ulterior motive or purpose; and (2) some act in the use of the legal process not proper in the regular course of the proceedings. *International Union of Operating Engineers v. Lowe Excavating Co., Inc.*, No. 98 C 7956, 1999 WL 350650, *3 (N.D. Ill. May 21,1999) (Kocoras, J.), *citing Podolsky v. Alma Energy, Corp.*, 143 F.3d 364, 372 (7th Cir.1998); *Neurosurgery and Spine Surgery, S.C. v. Goldman*, 339 Ill. App. 3d 177, 183 (Ill. App. 2003). Because the tort of abuse of process is not favored under Illinois law, the elements must be strictly construed. *Goldman*, 339 Ill. App. 3d at 183. "An actionable tort does not exist unless there is some improper use of the process of the court." *Johnson v. Collins*, No. 98 C 3516, 2003 WL 21038626, at *10 (N.D. Ill. May 07, 2003) (Andersen, J.).

As discussed in preceding paragraphs, the search and seizure of the plaintiff's computer was accomplished pursuant to Ms. Antonelli's consent, not pursuant to a search warrant or any other court authorization. Likewise, the communications between AUSA Johnson and Ms. Antonelli were in furtherance of the routine defense of this case. The plaintiff has failed to demonstrate that the government or government officials abused the legal process in any manner.

19

## B. Trespass (Count VIII) and Conversion (Count IX)

The plaintiff's alternative tort theories of conversion and trespass to property are equally without foundation. Trespass to chattel is defined as "the act of committing, without lawful justification, any act of direct physical interference with a chattel possessed by another." *Black's Law Dictionary* 1509 (7th ed. 1999). Conversion is defined as "the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held." *Republic Tobacco, L.P. v. North Atlantic Trading Co., Inc.*, 254 F.Supp.2d 985, 1006 (N.D. Ill. 2002), *quoting Fonda v. General Cas. Co.*, 279 Ill. App. 3d 894, 899 (Ill. App. 1996).

To state a prima facie cause of action for conversion or trespass to chattels, the plaintiff must establish the following elements: (1) the defendants' unauthorized or wrongful assumption of control, dominion or ownership of the plaintiff's property; (2) the plaintiff's right in the property; (3) the plaintiff's right to immediate possession; and (4) the plaintiff's demand for possession. *Republic Tobacco*, 254 F. Supp. 2d at 1006; *see also Minuti v. Johnson*, No. 02 C 4551, 2003 WL 260705, *4 (N.D. Ill. Feb. 5, 2003) (Zagel, J.), *citing Nelson v. Sotheby's Inc.*, 115 F. Supp. 2d 925, 929 n. 2 (N.D. Ill. 2000). To establish trespass to chattel, the plaintiff must also show that the dispossession resulted in damages. *Najieb v. William-Chrysler-Plymouth*, No. 01 C 8295, 2002 WL 31906466, at *10 (N.D. Ill. Dec. 31, 2002) (Aspen, J.), *relying on Restatement (Second) of Torts* §§ 217-218, 221-222. "In recent years, trespass to personal property, which had been largely relegated to a

historical note in legal textbooks, has reemerged as a cause of action in Internet advertising and e-mail cases." *Sotelo v. DirectRevenue, LLC*, No. 05 C 2562, 2005 WL 2095107, *8 (N.D. Ill. Aug. 8, 2005) (Gettleman, J.).

> The defining element of conversion, the one that distinguishes it from a trespass to chattels, is the extent of interference with the owner's property rights. If the damage is minor, in duration or severity, plaintiff may only recover for the diminished value. But if the damage is sufficiently severe, plaintiff may recover full value. Conversion is akin to a forced judicial sale.

*In re StarLink Corn Products Liability Litigation*, 212 F. Supp. 2d 828, 844 (N.D. Ill. 2002)

In this case, the plaintiff cannot demonstrate either trespass or conversion. The court is satisfied that Nancy Antonelli's voluntary relinquishment of the computer rendered the government taking authorized and rightful. Moreover, the plaintiff could not claim immediate possession of the computer because he was incarcerated. Finally, the plaintiff cannot establish damages because the computer was returned about a year later in the same condition in which it had been turned over to Sherrow and Sobol. Any deprecation in value of the computer was caused by its age, and not by any destructive actions on the part of government officials. The plaintiff's claims under the Federal Tort Claims Act are all baseless.

## CONCLUSION

In sum, for all of the foregoing reasons, the court finds that no outcome-dispositive facts are in dispute and that the defendants Sherrow and Sobol are entitled to judgment as a

matter of law. Accordingly, the clerk is directed to enter summary judgment in favor of Sherrow and Sobol and against the plaintiff pursuant to Fed. R. Civ. P. 56. The plaintiff's remaining claims against the United States and AUSA Patrick Johnson are dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a cognizable claim. The plaintiff's cross-motion for partial summary judgment is denied. The clerk is directed to enter final judgment in this case.

If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with the court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). Because the plaintiff has "struck out" pursuant to 28 U.S.C. § 1915(g) and this case does not involve imminent danger of serious physical injury, the notice of appeal must be accompanied by the $255 appellate filing fee.

IT IS THEREFORE ORDERED that the plaintiff's motion for partial summary judgment [docket #110] is denied. IT IS FURTHER ORDERED that the defendants' motions to dismiss [docket #75] and for summary judgment [docket #77] are granted. The case is terminated. The parties are to bear their own costs.

ENTER:

JOHN A. NORDBERG
United States District Judge

DATED: September 21, 2005